In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA**,
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **ANTHONY ELLIOTT**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| *vs.* ) | **CAUSE NO. 1:09-cv-653-SEB-DML** |
| ) | |
| **MICHAEL J. ASTRUE**, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**E N T R Y**

Plaintiff Anthony Elliott applied for disability benefits under the Social Security Act, alleging that he became disabled in April 2005. Defendant Commissioner of Social Security denied his application and Mr. Elliott brought this suit to obtain judicial review of that decision. For the reasons set forth below, the Commissioner's decision is affirmed.

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited

scope of judicial review follows the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of his legal conclusions is *de novo*. *Richardson*, *supra*.

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(I) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 USC § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently

2

engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, if the applicant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

The burden rests on the applicant to establish steps one through four.  The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  20 C.F.R. §§ 404.1569 and

1569a.  If an applicant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used and a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may still be used as an advisory guideline in such cases.  20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the national Appeals Council to review the decision.  If the Appeals Council either declines to review or affirms the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. § 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

Mr. Elliott applied for benefits in November 2005.  His application was denied on initial and reconsideration reviews.  After a hearing in July 2008, at which a vocational expert testified,

---

[1] Initial and reconsideration reviews in Indiana are performed by an agency of the state government — the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration — under arrangement with the Social Security Administration.  20 C.F.R. Part 404, Subpart Q (§ 404.1601 *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

the presiding ALJ denied his application. Because the Appeals Council subsequently denied Mr. Elliott's request for review, it is the ALJ's decision that we review as the final decision of the Commissioner on Mr. Elliott's claim for benefits.

At step one of the sequential evaluation process, the ALJ found that Mr. Elliott had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ found that Mr. Elliott has the severe impairments of obesity, diabetes mellitus, osteoarthritis, hypertension, history of gout, and headaches. The ALJ found that Mr. Elliott's mental impairment of depression does not cause more than a minimal limitation in his ability to perform basic mental work activities and, therefore, is not severe. At step three, the ALJ found that Mr. Elliott does not have an impairment or combination of impairments that either meet or medically equal any of the conditions in the Listing of Impairments. He evaluated Listings 9.08 (diabetes mellitus), 1.02A (major dysfunction of a joint, for osteoarthritis), and 11.17 (degenerative disease not listed elsewhere, for gout). The ALJ also considered Mr. Elliott's obesity under the Listings and in combination with his other impairments.

The ALJ determined that Mr. Elliott has the RFC to perform work at the "light" exertional level, with the following additional limitations: lift 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; no more than occasional bending, squatting, or climbing of stairs or ramps; no kneeling, crawling, or climbing of ropes, ladders, or scaffolds; no walking on uneven surfaces, working at unprotected heights, working around dangerous moving machinery, operating a motor vehicle, being around open flames or large bodies of water, work requiring wide fields of

vision, inspecting or sorting small objects, detailed reading or frequent reading of typewriter print; only simple and repetitive tasks; no more than superficial interaction with the public, co-workers, and supervisors; an environment relatively free of noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity. At step four, the ALJ found that Mr. Elliott is unable to perform his past relevant work as a bus driver. At step five, the ALJ found that, considering Mr. Elliott's RFC, age (45 at his alleged disability-onset date, classified as a "younger individual"), education (at least a high-school education), and transferability of skills (immaterial at the particular Grid level), and relying on the Grid as a guideline and on the testimony of the vocational expert, jobs exist in significant numbers in the national economy that Mr. Elliott can perform. Therefore, the ALJ found that Mr. Elliott was not disabled and not entitled to benefits. Mr. Elliott asserts several errors with the ALJ's decision.

**Due process.** Mr. Elliott argues that the ALJ's decision denies him constitutional due process of law because it rejects all of the evidence proving disability, denies him a fair consideration of his claim, and fails to build an accurate and logical bridge from all of the evidence to the ALJ's findings. (Plaintiff's Brief (dkt. 18) at 16-18). However, Mr. Elliott failed to present a factually and legally developed argument for a due-process violation. The three cases that he cites provide no support. Two, *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 859 (7th Cir. 1978), and *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000), do not mention due process.[2] The third, *Ray v. Bowen*, 843 F.2d 998, 1007 (7th Cir.

---

[2] *Smith v. Secretary* faulted an ALJ's failure to explain with sufficient detail and care the role and advantages of a lawyer to a mentally infirm, unrepresented applicant and the ALJ's failure to fully develop the record when the applicant was unrepresented. It did not address due process. *Smith v. Apfel* held that an ALJ failed to fully develop the record and failed to consider

1988), reversed and remanded a claim because the ALJ failed to obtain a retroactive psychological examination of the applicant to determine if disabling alcoholism existed during the relevant time period. After comparing the situation to a trial judge's due-process obligation to obtain a retroactive examination of a litigant who was possibly incompetent at the time of trial, the Court held that, "[t]hough [disability applicant] has no analogous due process right to disability benefits, we believe that he is entitled to a fair hearing on this claim and, ultimately, justice." The Court offered no more due-process analysis or discussion with regard to disability evaluations.

Whether administrative determinations violate due process and, if so, whether a remedy is available beyond the benefit at issue, are complex questions of fact and law. *See*, *e.g.*, *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *Schweiker v. Chilicky*, 487 U.S. 412 (1988). It is not a due-process violation *per se* for an ALJ to reject evidence supporting a finding of disability, to not discuss all of the evidence, or to reject an applicant's assertion that a medical expert is required. The Court will not assume Mr. Elliott's burden to research the law of due process, search the record for possible violations, and construct a focused, logical, and persuasive argument applying the law to the facts. Without developed factual or legal support, Mr. Elliott's due-process argument fails.[3]

---

some of applicant's contrary evidence, but not within a due-process framework. Both decisions were based on statutory and regulatory grounds.

[3] In addition, Mr. Elliott failed to demand or define any remedy for the alleged deprivation of his due-process rights than what is otherwise obtainable under the Social Security Act and regulations in this action for judicial review.

**Failure to call a medical advisor.** Mr. Elliott asserts that the ALJ erred by not calling a medical advisor (specifically, a rheumatologist, endocrinologist, or psychologist) to testify whether his combined impairments medically equal a listed condition. (Plaintiff's Brief at 18-19). His argument is threefold: he argues that, without a medical expert's testimony, the ALJ did not have an informed basis for his step-three finding; one or medical advisors were required because the ALJ failed to consider his several quite severe psychiatric and physical impairments in combination; and the ALJ's failure to understand or consider the combined effects of his impairments caused the ALJ to conclude that his impairments were self-inflicted by his lifestyle.

State-agency physicians reviewed the evidence and determined that Mr. Elliott's impairments, individually or in combination, did not meet or medically equal any of the conditions in the Listing of Impairments. This satisfies the requirement that an ALJ obtain expert medical opinion on the subject of medical equivalence. *See* 20 C.F.R. 404.1527(f)(2)(1); S.S.R. 96-6p, 86-8; *Shenk v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *Scott v. Sullivan*, 989 F.2d 519, 524 (7th Cir. 1990). In addition, the ALJ specifically stated that he considered the effects of Mr. Elliott's impairments in combination when he determined whether they meet or equal a listed condition.

**Failure to cite or discuss Listing 12.04.** Mr. Elliott argues that the ALJ erred by failing to cite or discuss Listing 12.04 (affective disorders) "although the evidence proved that the claimant's moderate depression contributed to his overeating and thus to his disabling morbid obesity." (Plaintiff's Brief at 20). He further asserts that "[t]he ALJ ignored all of the evidence of mental impairment. Without citing any evidence, the ALJ arbitrarily determined that the

claimant's major depression was not even a Severe impairment under the Step 2 determination." (*Id*.)

Because the ALJ found that Mr. Elliott's depression impairment was not severe, it was not erroneous for him to not address whether his depression, alone or in combination with his other impairments, met or medically equaled the criteria of Listing 12.04. Mr. Elliott argues that the ALJ should have addressed this Listing because the evidence proved that his depression contributed to his overeating and, thus, his disabling obesity. However, he does not cite that evidence and, moreover, the ALJ found that he was not disabled due to obesity. Mr. Elliott next argues that the ALJ's finding that his depression was not severe was erroneous because he ignored all of the evidence of mental impairment and made an arbitrary decision that contradicted a January 5, 2006 medical report showing that his major depression, alone, was at least a moderately severe impairment. Mr. Elliott does not cite any mental-impairment evidence that the ALJ ignored other than the January 5, 2006 medical report. That is a report of a visit by Mr. Elliott to the Midtown Community Mental Health Center for an initial assessment, which, as the report states, "consisted of gathering information" for further assessments and development of treatment plans. The report also states that "Anthoney [*sic*] will complete evaluation with MD/CNS to explore medication and treatment options within 90 days." (R. 123).[4] The ALJ specifically discussed and relied on the findings of consultative psychological examination of Mr. Elliott conducted by Dr. Jerome Modlik, clinical psychologist, that was performed on

---

[4] In his brief, Mr. Elliott asserted that the Social Security Administration failed to include this and other Midtown Center documents in the official administrative Record filed with the Court and he attached copies of them to his brief. However, all of the attached documents are part of the Record in the Court's file. (R. 122, 123, 125, 127, 128).

9

January 30, 2006, (R. 164), in the same month as the Midtown Center's report that Mr. Elliott cites. (R. 16). It was not erroneous for the ALJ to give greater weight and articulation to Dr. Modlick's comprehensive evaluation of Mr. Elliott's mental status than to the initial, tentative findings of Midtown Center that were, on their face, made without full assessment and in anticipation of further development.

Mr. Elliott has not shown that the ALJ ignored all mental-impairment evidence in making his step-two determination that Mr. Elliott's depression was not a severe impairment. The ALJ discussed his evaluation of the four functional areas that the Listings prescribe for evaluating the severity of mental impairments, including Listing 12.04, commonly referred to as the "paragraph B" criteria of severity. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, Rule 12.00C and 12.04B. While the ALJ did not cite specific evidence under his step-two heading, (R. 13-14), he did explain that a more detailed assessment of the evidence and his findings relating to the four broad paragraph-B factors were found in his following RFC determination because the analysis involved in the two determinations are parallel.

Mr. Elliott has not shown that the ALJ erred in not specifically discussing Listing 11.04, that he ignored all mental-impairment evidence, or that the ALJ's step-two determination was arbitrary.

**Ignored evidence.** Mr. Elliott argues that the ALJ's decision is not supported by substantial evidence because he "ignored [*sic*] misstated, argued with or arbitrarily rejected all of the controlling treating evidence of disability." (Plaintiff's Brief at 22). He also asserts that the decision is "contrary to the medical evidence, and is plainly erroneous." (*Id.*) He then states that

it is error for an ALJ to select and discuss only evidence that favors his decision; an ALJ's decision must be based on a consideration of all of the evidence; if an ALJ fails to acknowledge evidence showing a claimant's disability, then a reviewing court cannot discern the ALJ's reasoning or whether he considered all of the evidence. (*Id*.) There follows a catalog of evidence allegedly favorable to Mr. Elliott's disability that he contends the ALJ allegedly ignored, misstated, or arbitrarily rejected. However, he really complains that the ALJ did not draw the inferences from the evidence that he draws or the ALJ did not give the evidence the weight that he gives it. An ALJ is not required to address every piece of evidence in his decision; it is sufficient if he traces the path of her reasoning and logically connects the evidence to his findings and conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993). Mr. Elliott fails to explain why the particular pieces of evidence that he cites are so material in relation to the other evidence or facts that the ALJ discussed, that the ALJ was obliged to explicitly address them. As it is, what Mr. Elliott appears to argue, in essence, is that, if the ALJ did not specifically discuss a particular item of evidence, then he must have ignored or arbitrarily rejected it. That inference is unreasonable and the principle is contrary to the law. After reviewing Mr. Elliott's litany of evidence, in relation to the ALJ's decision, we find that most of it is cumulative, repetitive, and immaterial. We are convinced that the ALJ neither ignored nor arbitrarily rejected the evidence of Record and that he adequately traced the path of his reasoning and logically connected the Record evidence to his findings and conclusions.

**Credibility determination.** Mr. Elliott asserts that the ALJ's credibility determination is erroneous and he supports this assertion with another bare unhelpful litany — in this case, a

series of conclusory statements: the ALJ's findings are contrary to the controlling evidence that he arbitrarily rejected or ignored, he failed to give proper weight to the controlling treatment and evaluative evidence, he never accurately considered the factors prescribed by S.S.R. 96-7p, he substituted his layman's opinion of the medical evidence for expert medical opinion, and his findings are contrary to S.S.R. 96-7p. (Plaintiff's Brief at 31). Mr. Elliott also provides caselaw citations to support the principle that S.S.R. 96-7p is binding on the Social Security Administration. (*Id.*) Finally, Mr. Elliott describes some holdings of a Seventh Circuit decision that reversed an ALJ because he failed to give specific reasons for rejecting a claimant's testimony and failed to consider the S.S.R. 96-7p factors. (*Id.*) This is not argument; it is merely conclusory assertion. Such perfunctory statements, unsupported by legal and factual development are forfeited. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)").

**Step five determination.** Mr. Elliott argues that the ALJ's RFC assessment was erroneous because it "omitted that the claimant was barely able to function during the closed end period of disability due to his combined quite severe psychiatric and physical impairments. Remand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that she is not disabled." (Plaintiff's Brief at 33). As another perfunctory, undeveloped argument, this one also is forfeited.

**Conclusion**

Mr. Elliott has failed to show that the ALJ's decision is not supported by substantial evidence or is legally erroneous. Therefore, the Commissioner's decision denying Mr. Elliott's claim for disability benefits is **AFFIRMED**.

**SO ORDERED.**

Date: 09/29/2010

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com